Good morning. Good morning. The reason we are here today... Could you identify yourself for the record, please? Jody Thorpe with Federal Defenders, on behalf of Mr. Figueroa-Ocampo. The reason we are here today is because the Supreme Court in Laocale has mandated that statutory definitions need to be consistent for both immigration and sentencing purposes. After Laocale, the Ninth Circuit now has to resolve its two conflicting definitions of what the language any felony under the Controlled Substance Act means. This three-judge panel can resolve this conflict because at the time the decision was made in Ibarra-Galindo, since then intervening en banc authority in Corona-Sanchez and a subsequent amendment, a 2003 amendment to the 2L1.2 sentencing guidelines have essentially changed the premise the Ibarra court relied upon. The Ibarra court, when determining that a state felony for simple possession that would not be, that would actually be a misdemeanor and not a felony under Federal law, when making the determination that that was an aggravated felony, the Ibarra court relied on the premise that state law definition of crimes controls for the purposes of Federal sentencing. Now the en banc decision in Corona-Sanchez and the 2003 amendment both have undercut that premise that the Ibarra court was relying upon. In Corona-Sanchez, the en banc panel of this court determined that we must have uniform, national, and generic definitions of offenses for Federal sentencing purposes. In stressing the importance of uniformity for the sentencing context, the Corona-Sanchez court looked to the language in Taylor and the language that rejected the notion that an enhancement can depend on whether the state defines the conduct as burglary. It was basically the Corona-Sanchez court realized that we need a Federal benchmark for sentencing purposes. Now the Casares-Gutierrez court relied upon the Corona-Sanchez court, at least in making its determination for uniformity. The Casares court recognized that there was a tension between what Corona-Sanchez held and the Ibarra-Galindo decision. In recognizing that tension, Casares-Gutierrez noted that Corona-Sanchez relied upon the desirability of uniformity in sentencing. In relying upon that, the Casares-Gutierrez court made its determination, taking into consideration that we need uniform treatment for people who are engaged, who create similar conduct, but in different states. That we need uniformity in immigration law and because it would be fundamentally fair. Not only did the Casares-Gutierrez court look to Corona-Sanchez and follow the Corona-Sanchez line of uniformity, but the recent Supreme Court decision in Booker also followed that Corona-Sanchez notion of the importance of uniformity in the sentencing context. In Booker, both of the majorities agreed with the overarching congressional intent that defendants with similar backgrounds who commit the same offense should be treated similarly in the sentencing context. Now, the en banc and Supreme Court decisions basically are new decisions that the Ebarra court did not have to rely upon when it made its decision. And in addition, we also have a change in the guidelines that the Ebarra court did not, was not able to rely upon. Are you effectively asking us to use an immigration rule in a sentencing context? Well, it's not an immigration rule. It's a sentencing rule as well. Well, basically what Where does it come from? Wasn't it an immigration context? It is an immigration context. So you're asking us to transport that into a sentencing context. Well, the guidelines actually say that we're to use immigration law when determining sentences under 2L1.2 because it isn't. That isn't exactly what we're dealing with here. And wouldn't this be out of step with all the other circuits that have interpreted 924C in a sentencing context? I mean, the Casares-Gutierrez case lists the circuits that have adopted a similar definition of aggravated felony. So it seems that this cuts against your position. Well, those cases were actually prior to the decision in Laelcal. The decision in Laelcal basically says we need uniformity in immigration and sentencing. So it needs to be the same. This court basically needs to make a determination of what the rule is going to be and whatever decision this court decides will be the rule, but it needs to be the same in both sentencing and immigration law. Now, the guidelines, going back to the guidelines, at the time the Avaro court made its decision, the guidelines were actually different. The application note one to the guidelines at that point in time defined felony for the purposes of aggravated felony. It defined it as any federal, state, or local offense punishable by imprisonment for a term exceeding one year. So the words federal, state, or local were actually present there in the guidelines. Now, in 2003, this application note was stricken with regard to aggravated felonies. So the current guidelines, as we have today, do not reference state or local, any federal, state, or local offense. That's left open, and it creates an ambiguity that wasn't present at the time the Avaro-Galindo court made its decision. All that the current amendment has us do is rely on immigration law and the immigration statutes in coming up with what aggravated felony refers to. This is extremely important because that application note that no longer exists under 2L1.2B1C for defining felony is an application note that the Avaro-Galindo court expressly relied upon in its decision. So now that it no longer exists, we essentially have a situation where there is ambiguity, and under LAOCAL, the rule of lenity applies, and the rule of lenity applies equally in immigration proceedings as it would in a sentencing context. There are other reasons why it's important to have uniformity in the sentencing context and why this court should adopt the approach that the court adopted in the Cazares-Gutierrez case. Not only is it important because the Supreme Court in Booker has noted it, the en banc decision in Corona-Sanchez noted it as well, and the sentencing guidelines have created that ambiguity, but when we just look at the policies and the reasons behind why it's important to have uniformity, it doesn't make sense why there would be two different sentences based on the same conduct. Essentially what we have right now is a situation where someone who committed an offense in California near the federal courthouse but not at the federal courthouse who committed, which was, he was convicted of state felony for state possession. Basically that person could receive a higher sentence after coming back in than someone who committed the same conduct within the federal courthouse, and the reason for that is because under federal law it's a misdemeanor, not a felony. So that type of disparate sentencing where you have somebody who committed the exact same conduct maybe 50 feet apart can be sentenced differently is what we've been trying to get away from. It's what the Sentencing Guidelines Commission wanted to get away from, and it's what Corona-Sanchez and the Booker courts realized we need to refrain from doing. There's also a lot of constructionist approaches to taking the uniform method. When you look at Brown v. Gardner, it states that the words in the same statute should have the same meaning, and right now with the tension between Abarra-Galindo and Casares-Gutierrez, we don't have the same words on the same statute having the same meaning. And so that's another reason why it's important for this court to take a uniform approach. When you look at the ordinary meaning of the term drug-trafficking crime, Leocal also told us to go to the ordinary meaning of the term. And when looking at the ordinary meaning of the term drug-trafficking crime, it doesn't make sense that simple possession would fall into the ordinary meaning of drug-trafficking crime. There's also a rule of construction that notes that when you're dealing with federal statutes, the words should be defined by federal law, and federal law has defined simple possession as being a misdemeanor. And more importantly, in Leocal, the court expressly stated that the rule of lenity does apply. And when looking at the situation where we have two different, where we have situations where two different defendants can receive disparaging treatment, there's an ambiguity, and an ambiguity that's been set in place that wasn't there at the time Abarra-Galindo made its determination. And when looking at that, we need to enforce the rule of lenity. Is your position fundamentally, let me see if I can, is it fundamentally that the same conduct shouldn't receive different treatment under state and federal law? That the same conduct, no, the position is that the same conduct should not be, once someone commits illegal reentry and is convicted of illegal reentry, the same conduct they had done in the past, whether it be state or federal, if it's the same conduct, it should not create disparaging sentences. Now the way we have it, it doesn't necessarily have to be. I don't quite follow that, because I thought the three strikes you're out, the same conduct can send you to prison for life that wouldn't be a federal crime at all. It's not only limited to the distinctions between federal and criminal law, because also states define simple possession. Some states define simple possession as a misdemeanor, and some states define it as a felony. So there again, you have the same state conduct that is, just because it's given a different term, is being treated differently. What was the sentence that this person got? 16 months. And that was determined to be a felony under California state law. However, under federal law, Mr. Figueroa's sentence would not have been enhanced, because under federal law, simple possession was a misdemeanor, and he could not have received 16 months for that sentence. Okay. What do you think Leocal does to our statements in Casares Gutierrez about the difference between immigration and sentencing rules? Well, Leocal basically makes this Court have to make the determination which one is correct. You have to decide between whether the … Leocal's statement was in a footnote, wasn't it? It was in a footnote. And is it a holding of some kind? Well, I do think it's a holding in the extent that it clarifies that we need to have uniformity in both immigration and sentencing respects. When you look to Casares Gutierrez … With respect to what, did it function? I mean, did it say that some rule has to be different because of this principle? Or was it just sort of a passing comment? It went to the mode of analysis in determining the decision in Leocal. It wasn't … You're correct in that it's a footnote. It seems like an atmospheric to me. Right. But it is something that this Court needs to take into consideration in noting that the Supreme Court's recognizing that we cannot have these differences in the same statute. Because the Casares Gutierrez Court did go through and explain the differences in immigration law and the importance of immigration law. However, the Casares Gutierrez Court did not spend a lot of time discussing the uniformity in sentencing. And where it did discuss uniformity in sentencing, it quoted Corona Sanchez. Well, but it also extensively discussed the difference between federal and state law. It did. But at the same time, it found that you cannot have a separate meaning. The aggravated felony had to have the same meaning regardless of whether that simple possession incurred in state or … I'm just not sure Leocal carries the force that you would assign to it. Well, the Booker Court also makes clear that even if absent Leocal, we still have the Corona Sanchez en banc court and the Booker court who are saying that we need uniformity in the sentencing context and we still have ambiguity in that statute where the rule of lenity does apply. And that was a holding. Uniformity in sentencing is a pretty elusive goal, I think, is kind of the lesson of the last few years. Well, even if it's an elusive goal, in this context where you can see the disparaging treatment and that it exists and there is an easy fix by reading the statute, then it makes sense that that's a goal that we should ascertain. Now, even if this court finds that Mr. Figueroa-Campo, his simple possession does constitute an aggravated felony, even if this court takes that position, there is still a violation of Mr. … because the court basically utilized the 20-year statutory maximum as opposed to the two-year statutory maximum. Mr. Figueroa-Campo was found guilty after a jury trial. With that jury trial, there was never an admission, there was never a finding beyond a reasonable doubt that he was deported and that he was deported after an aggravated felony. So absent jury determinations beyond a reasonable doubt or admissions, that basically violated the rule of Apprendi in utilizing the 20-year statutory maximum. Now, this court has relied on the Supreme Court's decision in Almodovar v. Torres to hold that the facts of a prior conviction can be used to enhance a sentence absent an admission or a finding by a jury beyond a reasonable doubt. However, in Jones v. Apprendi, Jones v. Apprendi made clear that the Almodovar v. Torres holding is limited to the facts of that case where the person was making a challenge to the indictment after having pled guilty, and not only pled guilty, but having admitted that the person had been deported and that he had been deported after committing an aggravated felony. So everything was admitted to in that case. In this case, we cannot construe 8 U.S.C. Section 1326 to provide enhancements without a jury determination because that runs the risk that 1326 will be unconstitutional. Now, the Supreme Court just recently said in Shepard a couple weeks back that we must use the rule of constitutional doubt to avoid that type of interpretation that would make Section 1326 unconstitutional. So in light of Shepard and Apprendi and Jones utilizing a 20-year statutory maximum that's not supported by a jury finding, and a jury finding beyond a reasonable doubt violates Apprendi and Jones and violates Mr. Figueroa's right to the Sixth Amendment. If there are no further questions, I'd like to save the rest of my time for rebuttal. Thank you. Good morning, Your Honor. Please record Randy Jones, Assistant United States Attorney, on behalf of the United States. With respect to the issue raised by the appellant regarding simple possession not being an aggravated felony, I think this Court has already decided that it is and it can constitute an aggravated felony. If, in fact, the punishment was for more than a year, either in the federal or state law, and it's a crime under the Federal Controlled Substance Act. In this particular case, the appellant's simple possession charge, basically, I think he was sentenced to three years in the state court on that particular case. So the first part of that is met. Is that a guilty plea? I think it was a guilty plea in this particular case. And in addition to that, it's clear that it is a crime, a drug trafficking crime under the Federal Controlled Substance Act. You say you've already decided this issue. What case are you referring to? I'm referring to the Arellano Torres case. And in that case, basically, the court says that in a situation like this that a drug offense may qualify as an aggravated felony if it's punishable under the Federal Controlled Substance Act and two, if it's a felony. And in this particular case, we believe that it does, in fact, meet those two standards. And because of that, we think that it's still binding law here in the Ninth Circuit that the Ninth Circuit would treat this simple possession charge as an aggravated felony. And there's no basis, no matter what, the appellant would argue to the court for the court to change that. I think in Casares, it really indicates that there may be a need for uniformity in the immigration context because immigration is a strictly federal, exclusive federal situation. But immigration is not under the state province. And with respect to state crimes, state crimes all across the board have different sort of reasons that you may see in one state, somebody might get three years for conviction of a possession charge. In Ariana Torres, we say we held in Robles Rodriguez that Congress intended the word felony to describe offense as punishable by more than one year's imprisonment under applicable state or federal law. So right away, you've got disparity. The other side argues that Leo Cal has come along on a footnote and undone all of this and required us to force together definitions that appear under immigration law and definitions that appear in the sentencing context. What's your response to that? I don't think it does. I think that it may be. The fact that it's a footnote would tell you that we don't believe that it changes the court's posture on this or should change the court's posture on this, because in this particular case, we're talking apples and oranges, as Judge Huff said. You're talking immigration law and you're talking federal state drug possession laws. So apples and oranges, there's no need to have those uniform in that particular case. You've got a situation where, as I stated before, that, you know, various states have different laws regarding drugs. And that is criminal activity and the sentencing of criminal activity is in the province of the states. There's that separation of power, separation of power from the state, what the state can do and what the federal courts can do. And in this particular case, I think that the state of California, in determining that civil possession that the appellant was convicted of in that case, was punishable for more than three years. So therefore, it would be a felony. Yeah, but it becomes a federal situation because of the federal definition, right, not because of the state definition. Well, it becomes a federal, it becomes, it's kind of tricky because it becomes a federal situation because what they do is take that felony determination made in the state and use that when we're sentencing him for an aggravated felony charge. And what the courts do in that case is look at the, look to the state to determine whether or not it's a felony. It's not based on... We're using a state misdemeanor and we're calling it a federal felony? No, we're saying that, I think what counsel's arguing that we're taking a crime that would be a misdemeanor under the federal system and make it a felony for purposes of this particular offense. So given the fact that 90% of state convictions are guilty pleas and you never really know what the actual conduct was that may have been guilty of, don't you think there, isn't that a practical reason for the result that you're arguing for? I'm sorry. I guess I'm not making much sense, but as I understand the appellant's argument, it is that the same kind of conduct shouldn't be treated differently in the systems. And yet, given the fact that all we know is a conviction that may have been pleaded guilty to, we don't really know what the original conduct was and we never really will know all the conduct that the alien was guilty of. And I don't think we need to know that. I think what needs to be determined, as was determined in this court, is whether or not under state law, federal or state law, it was a felony. And under state law, it was clearly a felony because he was punishable by three years. And then whether or not it violated the Federal Control Substance Act. Those are the only two things that, according to the state of the law now, that the court needs to determine. At least he received a sentence of more than a year. Right. In that particular case. If there's nothing else on that point, I'd like to move to the issue raised regarding Apprendi and Jones and Shepard. First of all, with respect to Shepard, the government did not get a chance to file a 28-J letter in this particular case. But if the court needs more, would like further briefing from the government on the issue, we'd ask for a couple of weeks to respond to the defendant's arguments in this case. But be that as it may, I think that the law is clear, and we believe that Amadeus is still good law, in that when you talk about recidivism, that there's an exception carved out, with respect to whether or not you can consider the prior conviction to determine whether or not the eight-level enhancement based on the defendant's prior aggravated felony was proper in this case. The criminal history calculations are all exempt. We've got a string of cases that the Ninth Circuit has already ruled, including Quintana Quintana, which we cited in our brief. There's also the case of United States v. Smith and the United States v. Lopez, Zamora. In all of those cases, it repeatedly acknowledges that a printed card is not an exception for the fact of a prior conviction. And we don't believe that Shepard changes this. We believe that the court properly decided this issue and was able to enhance the defendant's base offense level by eight, because of this aggravated felony. And until Amadeus is overruled, then we believe that this was proper. We don't believe also that Booker comes into play here. It's interesting, Judge Huff had two shots at determining what the appropriate sentence in this case was going to be. In the first instance, she said it was 37 months. And in doing so, she stated quite clearly that based on the defendant's past criminal history, based on the fact that he had reentered just nine days after previously being deported, based on the fact that he had several deportations, prior deportations, that she felt that 37 months was the appropriate sentence. She later came back two days later to correct that based on the fact that originally she thought that the defendant should get only minus two for acceptance of responsibility. Having reviewed the transcript, as she stated, she decided that he was entitled to the minus three. And as she stated, to avoid any appeal issue, she was going to give him the minus three. What that did is change the guidelines from 33 to 41 months to 30 to 37 months. But she came back and sentenced him to the exact same 37 months. So it wasn't that, as counsel argued, that she wanted to sentence him to the mid-range or whatever guideline calculation she came up with. Her intention is clear. She wanted to sentence him to 37 months, period. And she felt that by looking at the guidelines, you had a 33 to 41 month. She was going to give him 37 months. And that's what she did. So we believe that in that particular case, Bruckle does not come into play, because it's clear from the record what her intentions were, and that was that she wanted to give him 37 months in custody. Does that suggest she just ignored the extra point? No, it sounded like she said, I'll give it to you, but I'm going to take it away. Well, if she had given him a higher sentence, if she had gone up to something more than 37 months, I think that there may be an argument for that. But it was clear that that wasn't the case. She was trying to give him the benefit of the doubt on the acceptance of responsibility. And as you saw from the record, there was a lot of question as to whether or not he deserved any acceptance of responsibility. The government argued that he didn't deserve any reduction for acceptance of responsibility, because he challenged the elements of the offense at trial. And so I think what the court wanted to do was to give him the benefit of the doubt, because he did make a statement at the time of his arrest. And even though it was unclear as to whether or not it was on point that he had never applied for admission, readmission, she gave him the extra point nonetheless. But it was clear from what she was saying at court that she felt that 37 months was the appropriate sentence. Do you have anything to add on the motion to disclose the grand jury transcript, or are we compelled to wait until our decision is involved? I think that you are compelled, because as the state of the law is right now, as we see it, the Ninth Circuit is still bound by the cases dealing, I think, Mark Cucci and other cases that deal with the same exact charge that was given to the grand jury. And in that case, the court said that the charge given was consistent with the historical function of the grand jury. So until something else comes down different, I think that the court is bound by that decision. If there's nothing further, we submit. Thank you. First, with respect to your Honor's question with regards to the footnote in Leocal, looking at Leocal, that footnote can be construed as part of the holding. And the reason for that is because Leocal is very similar to this case here. The Section 16, which was at issue in Leocal, was they found that they did not lack clarity on that point, but they noted that Section 16 is not only an immigration statute, but also a criminal statute. And in noting that the statute deals with both, then there's a need for uniformity in the noncriminal. Are you looking at it right now? I am, Your Honor. Just read that for a second. Even if Section 16 lacked clarity on this point, we would be constrained to interpret any ambiguity in the statute in Petitioner's favor. Although here we deal with Section 16 in the deportation context, Section 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies. See, that's interpreting the statute consistently. And in this case as well, we have a statute that deals with both immigration and criminal consequences, so we do need to interpret it consistently as well. I would just note as well that with respect to the question that deals with whether we should be considering the conduct, in this case it's not we're dealing with statutory interpretation, not the conduct. If we go back to the conduct, then I would ask this Court to remand so that the Court can do a second-stage Taylor analysis, because in looking at this statute, it could also include aiding and abetting, which would then not be an aggravated felony. So I'd ask the Court to consider remanding on that in light of that as well. With respect to the second issue, in light of Shepard, this Court should reassess Quintana-Quintana, because Almedora's Torres can now not be read as broadly as it has been read in that line of cases. And I would also ask that the Court remand under 3553A so that the District Court has the opportunity to determine whether it was a reasonable sentence. I know that the District Court, Your Honor, for her to make a determination. The Southern District of California. Who? Judge Huff. Are you abandoning your vindictive sentencing argument? I'm not abandoning that, Your Honor. I'm happy to submit that on the briefs. But I think even if the Court does not find that that's vindictive sentencing, under 3553A, and the Seventh Circuit and the Sixth Circuit have already noted in Barnett and Palomine that the judge is still, at that point in time when the guidelines were mandatory, the judge still felt compelled to sentence within that guideline range. And it doesn't matter that she sentenced at the high end of the guideline range, because she was still making a determination of where this person was compared to other people that are in that same guideline range. Had she not been bound by the guidelines, she may very well have found that a different guideline was appropriate or that a different sentence was appropriate, not having been held. When you say she was vindictive, what do you mean by that? Your Honor, what occurred is there was. I know what occurred, but what do you mean by the fact that this was vindictive? Well, the Court realized that she had erred in not giving the third point off for acceptance. And as opposed to taking that into consideration and giving the third point of acceptance what it deserved, the way that it deserved under the guidelines, she essentially still ignored the third point by maintaining the 37-month sentence. I gave an explanation. But why was it, you know, vindictive carries with it certain meaning. Why was it vindictive? You've called it vindictive. Because, Your Honor, at the time of the original sentencing, two days earlier, the Court had made a record indicating that the mid-range was appropriate for this person. What's your definition of vindictive? Well, Your Honor. Vindictive is a very technical. It means kind of like paying somebody back improperly for doing something that you don't want. Punishing somebody. The Court didn't. What was the suggestion that there was any punishment here in this? Well, I think there was a sense of punishment because the Court did not want to give the third point off for acceptance. We had a lengthy discussion about the third point off for acceptance. Once the Court realized that the Court had actually erred in that and it needed to be corrected, the Court basically punished Mr. Figueroa Ocampo. Are you arguing it was punishing him for having taken the appeal by saying, I'm going to give you the same sentence that I gave you before? Exactly. He had already appealed. Well, not exactly those terms. He had already appealed. He had already filed a notice. In order to be vindictive. He had already filed a notice to appeal. And the Court knew that he filed a notice to appeal. The Court knew that the Court had erred in that issue. And instead of looking at the third point off for acceptance in light of the error and that it should have been given in the first place, the Court maintained its sentence. Okay. I'm going to take more of your time. Do you agree we should, or both counsel agreed that we should, the United States v. Navarro. Vargas. Yeah, Navarro-Vargas, that we should wait until that comes down? Or has it come down? Not yet. Okay. For that issue, yes, Your Honor. Well, but that issue goes to the validity of the indictment, doesn't it? The motion to reveal. It does, Your Honor. Yeah. Of course. It goes to the motion to reveal. So I guess we could decide the rest of it without. Probably we should defer submission. Well, I'm trying. Is it, what is it that's on appeal here? Is it the actual, do you have the transcript? I do not have the transcript, Your Honor. I mean, do you know whether this instruction was given or not? Oh, it was given. It was given. Okay. So therefore, that's a threshold issue. So I suppose we should defer pending the opinion in Navarro. Well, Your Honor, with respect to the other issues, if the court finds that. That instruction is routinely given in the Southern District. It is, Your Honor. And it was given in this case as well. The government conceded that it believed that that instruction was given in this case. Now the issue of Navarro-Vargas is whether it's appropriate. That's correct. But in dealing with whether we should defer. I think that rather than do a formal, we'll order it submitted. We can always vacate submission if Navarro comes down and casts a doubt on this. Thank you, Your Honor. So I think we'll just order this case deferred. That's good. Thank you. And so the case which was argued is submitted for decision. Now the last case for argument, as I understand it, is the Chan versus Reynolds. The Chan appeal is being submitted on the briefs. And so that is so ordered and we'll hear argument. No. No. Which one is being submitted? The number five on the count is being submitted on the briefs, I think. I don't know the name of it. Submit it as to 55815. There's three people. There are three. One of them is being submitted. I'm arguing on behalf of Mr. Chan. He's in custody. Well, that's 55815. So why do we have here that 55815 is being submitted on the briefs? Is that incorrect? I think that might have been a clerical thing with the clerk's office and the calendaring thing. I had spoken to San Francisco first and there was a question as to who was going to argue for Mr. Chan. That's 55815. But is the government? I don't think the government submitted on anything. I believe that Mr. Goodwin is arguing on behalf of Mr. Chan and Mr. Lim and Ms. Blair is representing Mr. Tam. So it's all being argued. So they're all being argued and this is a mistake. Okay. It's the same issue anyway. Right. But you're all here. We're all here. Okay. So you may proceed. Good morning, Your Honors. Deputy Attorney General Victoria Wilson for appellants. The California Court of Appeals considered and rejected.
judges: Schroeder, Pregerson, Trott